ANTHONY PAUL BENTON v. W. H. WEAVER CONSTRUCTION COMPANY

No. 7610SC1029

(Filed 16 November 1977)

**Negligence § 54— plaintiff working in building under construction—fall through elevator shaft—contributory negligence**

　　In an action to recover damages for personal injury suffered by plaintiff when he fell into an elevator shaft in a building under construction, evidence was sufficient to show that plaintiff was contributorily negligent as a matter of law where it tended to show that plaintiff, an experienced steel erector, knowing of the danger presented by a 27½ inch gap between the floor decking and

the beam beside the elevator shaft and aware of the open elevator shaft itself, was proceeding in such a manner that he could not stop and disengage himself from a cable upon which his pants leg was caught, but instead jerked himself free, and his momentum caused him to make a misstep onto the steel beam and finally to topple into the shaft.

APPEAL by plaintiff from *Godwin, Judge.* Judgment entered 26 May 1976 in Superior Court, WAKE County. Heard in the Court of Appeals 21 September 1977.

This is an action to recover damages for personal injury suffered by plaintiff due to a fall into an elevator shaft.

Defendant, W. H. Weaver Construction Company, was the general contractor for the construction of the Bath Building, a North Carolina State Government building on North Wilmington Street, Raleigh, North Carolina. Tri-State Erectors, Inc. was a subcontractor for the erection of the vertical steel columns and horizontal steel beams. Plaintiff was an employee of Tri-State Erectors, Inc.

At the time of his fall plaintiff was working on the fifth floor. His assignment was to paint red lead on portions of the steel beams which had recently been burned in the installation of steel bolts. The sub-contractor's work on the fifth floor had not been completed.

The jury rendered a verdict that plaintiff was not injured as a result of negligence of defendant. From a judgment for defendant, plaintiff appealed.

Under the provisions of App. R. 10(d) defendant cross-assigned as error the denial by the trial judge of its motion for a directed verdict upon the grounds, *inter alia,* that plaintiff's evidence showed that plaintiff was contributorily negligent as a matter of law.

*Blanchard, Tucker, Twiggs & Denson, by Charles F. Blanchard, Marvin Schiller and Robert L. McMillan, by Marvin Schiller, for the plaintiff.*

*Smith, Anderson, Blount & Mitchell, by J. G. Billings and Joseph E. Kilpatrick, for the defendant.*

BROCK, Chief Judge.

We first consider defendant's cross-assignment of error. If defendant is correct, the judgment for defendant must be affirmed. This is so because plaintiff's arguments Nos. 1, 2, and 3 relate to the trial court's instructions to the jury. These would have no bearing upon the question of whether plaintiff's evidence showed contributory negligence as a matter of law. His arguments Nos. 4 (A through I) are directed to rulings by the trial judge upon the admission of testimony and exhibits. A, B, C, D, E, and F relate to objections to defendant's evidence. These would have no bearing upon the question of whether plaintiff's evidence showed contributory negligence as a matter of law. G, H, and I relate to exclusion of testimony from plaintiff's witnesses bearing upon defendant's responsibility for conditions on the fifth floor. These would have no bearing upon the question of whether plaintiff's evidence showed contributory negligence as a matter of law. Plaintiff's arguments Nos. 5 and 6 are formal. They have no bearing upon defendant's cross-assignment of error.

At trial the plaintiff testified in pertinent part as follows:

"Using this model to illustrate, I stepped from this beam to the metal decking, started walking across, got my pant leg caught in a guide cable somewhere in here. A guide cable is a steel cable. And walking like this and jerked, and my momentum carried me forward and I tried to step to this beam to stop myself. My pant leg caught on one of these shear connectors or studs and I toppled over into the elevator shaft, and fell all the way to the ground below this into the pit.

I first saw the cable after it was locked on my leg. I just glanced back and saw it was a cable. Just the frayed ends of it came into contact with my pant leg. I had just a split second as I was going forward to glance back and see it and I jerked. The cable was a brown, rusty color. Most of the time they're five-eights or three-quarters of an inch thick. I assume that's what it was. I'd say the cable was laying somewhere right in here in one of these troughs, I guess. I mean I didn't see the cable but when I caught the frayed end. The decking has rusted due to the weather. The decking and the cable were similar in color.

I did not see the cable until I discovered that it was hooked into my trousers. I was walking across the ridges. I did not step on the cable. The only portion of the cable that I came into contact with was the frayed end. The frayed end was above the trough sticking up. The cable itself was down in the trough. I said I seen the frayed ends sticking up. The ridge wasn't but about that wide (indicating) and the frayed end was sticking up that caught my pant leg, so I would say it was down in the trough. The cable itself was down in the trough when I saw it for the first time."

\*    \*    \*

"Yes, there is another gap of 27½ inches from the other side of the decking to the center of the beam next to the side of the elevator shaft.

The beam which was next to the elevator shaft was an 8 inch beam, and that is the beam that had the stud connectors on it. The little round studs were in the middle of the beam. They were 10 to 12 inches apart."

\*    \*    \*

"I had a paint can in my left hand. I had a paint brush in my right hand.

Yes, I can use this brown piece of paper to illustrate to the jury and to the court the first step that I took. Yes, I can use the brown piece of paper to illustrate the second step I took (witness takes his second step and draws that on the brown piece of paper). That is when the cable caught on my leg, on my right leg. I looked down to see what was on there and went on like this (witness indicating) and I didn't have nowhere to step so I went to this beam (the beam beside the elevator shaft where the connector studs were).

I stepped onto that beam because I couldn't stop. I tried to get over to that beam to stop myself. My pant leg got caught on the second beam, on the shear connector stud. Then I was in the elevator shaft. I stepped off the decking with my left foot and then stepped with my right foot and that is where I got the cable caught on my trouser leg. Yes, that was the first time I had put my right foot down on the deck."

* * *

"I first noticed that the end of the cable had caught when I felt a pull and went like this (indicating). Yes, this marking on the brown paper is the heel print of my left foot. Yes, this would be my first step (indicating) and this would be my second step (indicating) and now my third step (indicating) and this would be my fourth step. That's when I was caught. I jerked, and I reached to that beam to stop myself. I couldn't take a normal step because I would have been in the opening. My right foot got caught on the beam. Yes, my right foot. I plunged into the elevator shaft right in here (indicating)."

* * *

"In the course of my ten years' experience as a steel erector, I have acquired a pretty good sense of balance. That's one of the things that I as a steel erector would pride myself in."

* * *

"On the day the accident happened, I was wearing regular work boots. They came up above 8 inches on my leg. I was wearing regular work pants. They were uniform type pants. They were fairly loose around the bottom, just regular uniform type work pants. No, they did not have a rolled up cuff on them. No, sir, they did not have a cuff. No, sir, I did not have my loose pants legs tucked in my boots. My pants legs came down on my legs to about shoe top level. Yes, sir, when I made my first step I stepped with my left foot. I stepped across the 27½ inch gap. And then when I made my second step I placed my right foot. And then when I was taking my third step that is when I first realized that I was caught.

I had the paint in my right hand. I never saw the cable before it actually caught on my pants. I was already in motion walking. It was at that point that I felt the cable on my right cuff, as I was in motion.

I was coming up with this foot (indicating) when I realized it was caught. I just pulled on up because I was walking. My momentum added to my jerk, and carried me over onto

the next beam beside the shaft. The jerk added to the momentum from my natural stride and carried me over there. Yes, I am saying it was a combination of both my natural momentum and the jerk. Yes, I did testify on a prior occasion when Mr. Jernigan took my deposition. Yes, on page 22 of my deposition Mr. Jernigan asked me the question 'Just one of your legs', and I answered 'My right leg.' I was referring to which leg caught the cable. Yes, Mr. Jernigan then asked me 'And what did you do with your right leg then', and I responded 'Jerked it loose.' Yes, and then Mr. Jernigan asked me the question, 'Jerked it and then what happened', and I responded 'Then I went forward and . . . .' I did say that.

And then when he asked me the question, 'When you jerked you went forward, is that right', and I responded 'Right'. That is true. When I gave Mr. Jernigan my testimony in the deposition I didn't say anything about the momentum from my natural stride having anything to do with it. But I told him I was walking across it. That stands to reason. No, when he asked me what caused me to go forward I said the jerk caused me to go forward, I didn't say anything about the momentum of my stride."

\*    \*    \*

"Yes, I did make the statement in my deposition, 'And there was an old frayed cable here which I caught my foot or pant leg on and I pulled out of that and it gave me momentum going forward.' Yes, you did read that correctly.

The remainder of that question reads, 'and there was an old frayed cable here which I caught my foot or pant leg on and I pulled out of that and it gave me momentum of going forward. And I had to step from this deck which it shows right here over to this beam to stop myself when my pant leg got caught in one of the shear connectors or the studs and toppled me over into the elevator shaft.' That's what it says, and that's just what I showed you. Yes, sir, that is what I told him when he took the deposition.

No I had no difficulty seeing the open shaft when I got up from where I was working and turned to go across to where I was getting ready to work. Yes, I knew it was there.

I knew it was there and I knew it didn't have a cover on it, that's right. Yes, I knew that when I stepped over the metal decking—that after having made my first step with my right foot I was about within 3 feet of the first gap. No, after I felt the metal cable on my pant leg I didn't stop and put down the paint can and put down the brush and use my hands to get the cable off. I think there is something that would have prevented me from doing that. Try walking, getting foot caught and see if you can stop and go back. I was in the motion of walking, sir.

No, I didn't try to rock back and put things down and get myself uncaught with my hands."

In ruling on defendant's motion for a directed verdict, the familiar rule requires that the evidence be taken as true and considered in the light most favorable to the plaintiff.

Plaintiff's testimony shows that he was an experienced steel erector; that he was traversing the uncompleted fifth floor of the Bath Building; that he had a paint can in one hand and a paint brush in the other; that he had no difficulty seeing the 27½ inch opening between the metal decking and the beam upon which he was going to step; that he had no difficulty seeing the open elevator shaft just beyond the beam upon which he proposed to step; that he felt his pant leg catch on the frayed end of a cable lying in a trough of the metal decking upon which he was walking; that he glanced back and saw that his pant leg was caught upon the end of the cable; that he could not stop to disengage his pant leg from the cable end; that he jerked his right leg free of the cable; that due to the combined momentum from his stride and jerking his right leg free it was necessary to step across the 27½ inch gap onto the beam beside the open elevator shaft to undertake to regain his balance; that when he stepped onto the beam beside the open elevator shaft his pant leg caught on a stud and toppled him into the elevator shaft.

The plaintiff, as an employee of a subcontractor working on the construction of a building, was an invitee of the defendant, the general contractor. *Maness v. Fowler-Jones Construction Co.*, 10 N.C. App. 592, 179 S.E. 2d 816 (1971). An invitee must use reasonable care commensurate with the normal activities of the type of establishment whose invitation he accepts. *Holland v.*

*Malpass*, 266 N.C. 750, 147 S.E. 2d 234 (1966). Plaintiff's testimony in this case shows that he, an experienced steel erector, knowing of the danger presented by the 27½ inch gap between the floor decking and the beam beside the elevator shaft and aware of the presence of the open elevator shaft itself, was proceeding in such a manner that he could not stop and disengage himself from the cable upon which his pant leg was engaged, but instead jerked himself free and his momentum caused him to make a misstep onto the steel beam and finally to topple into the shaft. These facts clearly demonstrate a failure to use ordinary care for his own safety in light of the danger presented by the nature of the work in which he was engaged, the high altitude and openness of the uncompleted fifth floor, and the open elevator shaft, dangers of which plaintiff was fully aware. *See, Deaton v. Elon College*, 226 N.C. 433, 38 S.E. 2d 561 (1946). This failure to use ordinary care under the circumstances, "if not the sole proximate cause of his injury . . . was at least a direct contributing proximate cause thereof." *Id.*, 226 N.C. at 440, 38 S.E. 2d at 566.

Thus defendant's motion for directed verdict on the grounds that plaintiff was contributorily negligent as a matter of law should have been granted. The judgment for defendant is

Affirmed.

Judges BRITT and MORRIS concur.